IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

―――――――――――――――――――――――――x
:
In re                                           :
                                                :   Involuntary Chapter 11
                                                :
WHITE STAR PETROLEUM, LLC                       :   Case No. 19-12145-JDL
                                                :
                          Putative Debtor.      :
―――――――――――――――――――――――――x

**REPLY OF WHITE STAR PETROLEUM, LLC IN SUPPORT OF MOTION
FOR ENTRY OF AN ORDER SUSPENDING THE INVOLUNTARY CASE**

White Star Petroleum, LLC, a voluntary debtor-in-possession ("WSP LLC" and together with its affiliated debtors-in-possession, the "Debtors") ), hereby files this reply (the "Reply") in support of its motion (the "Motion to Suspend") for entry of an order suspending the Involuntary Case purportedly commenced pursuant to section 303(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").  In reply to the objections filed by certain parties in interest, and in further support of the Motion to Suspend, WSP LLC respectfully states as follows:

**Reply**

1.      The Debtors' paramount goal is the success of their chapter 11 cases. Consensually moving these cases to this District was an important first step.  The hearings scheduled for June 26 and July 11 to consider, among other things, approval of the Debtors' first day operational relief and DIP financing on a final basis, and sale procedures, are the next critical milestones.  The Debtors believe that their cases now are on track to maximize value for creditors and preserve White Star's business as a going concern.

2.      With important tasks looming, the Debtors submit that litigating the fate of the involuntary case over the next several weeks is unnecessary, wasteful, and a threat to the

SC1:4963602.2

success of these cases.  On this point, the Debtors and the Committee seemingly agree.  *See Objection of the Official Committee of Unsecured Creditors to the Motion of White Star Petroleum, LLC for Entry of an Order Suspending the Involuntary Case* [Doc. 122] (the "UCC Objection"), at 2 (asserting conversion presents "the best and clearest path toward putting the needless litigation that has marred the early days of these cases in the rearview mirror and getting on with what is truly important – finding a path forward that will maximize value to all the Debtors' stakeholders").

3. The disagreement is how to best achieve that goal of focusing on the core value maximizing tasks in chapter 11 in a responsible manner.  The Debtors have proposed suspension:  an option expressly provided by section 305 of the Bankruptcy Code that is the only path that would immediately halt the incurrence of additional expenses relating to the Involuntary Case.  Suspension also avoids the compromise or waiver of the Debtors' claims and defenses at the early stage of these cases.  The Committee and the Petitioning Creditors, on the other hand, favor conversion of the Involuntary Case and consolidation of that case into the voluntary case of WSP LLC.  While that relief is not before the Court now, the Debtors have numerous concerns about the Committee's approach and believe that it poses risks to the Debtors.  Two issues, in particular, were omitted from the Committee's objection and are highly relevant to the Debtors' decision to seek suspension of the Involuntary Case.

4. *Creation of Administrative Claims*.  If an order for relief is entered in the Involuntary Case, the Debtors may be required to pay, as an administrative expense, the expenses of the Petitioning Creditors.  11 U.S.C. 503(b)(3)(A).  The Debtors do not believe that it is appropriate for their estates to foot the bill for what was admittedly a self-interested litigation tactic.  *See, e.g., Objection of Petitioning Creditors to Motion of White Star Petroleum,*

-2-

*LLC for Entry of an Order Dismissing the Involuntary Case* [Doc. 134], ¶ 24 (acknowledging "[t]he filing advanced the Petitioning Creditors' interests").

5. If the Debtors failed to seek suspension of the involuntary proceedings and consolidation proceeded, they would potentially forego their right to oppose paying the Petitioning Creditors' fees. *See In re Crazy Eddie, Inc.*, 120 B.R. 273, 278 (Bankr. S.D.N.Y 1990) (rejecting challenge to administrative expense claim and holding "the Debtor should have preserved its rights [with respect to the involuntary] pending the voluntary proceeding and revisited them at a later, more appropriate date"). The Debtors do not believe any estate fiduciary should waive rights to contest the allowance of an unspecified priority claim at this early stage. Suspension, which preserves defenses to any administrative claims, is clearly a superior option for the Debtors' estates.

6. *Costs to Pursuit of Immediate Conversion and Consolidation.* The Committee asserts that conversion and consolidation would "preserv[e] . . . the earlier petition date in the Involuntary Proceeding [which] could protect valuable avoidance actions." UCC Objection ¶ 15. In fact, suspension would efficiently preserve the earlier date pending a full investigation into whether there is any value in ultimately doing so; prematurely seeking to consolidate now would come with additional costs and uncertain outcome. Creditors who are the potential targets in the enlarged preference period would be affected by consolidation, and thus are entitled to notice and an opportunity to object—a recipe for more early case litigation. *See In re Awal Bank, BSC*, 455 B.R. 73, 90 (Bankr. S.D.N.Y. 2011) ("Consolidation under Bankruptcy Rule 1015(a) is not purely administrative and, like substantive consolidation, affects the substantive rights of the creditors.").

7. While *In re Premier General Holdings Ltd.*, cited by the Committee and other creditors, preserved the involuntary case, other cases have reached the opposite result and determined that the voluntary case should survive. *See* 427 B.R. 592, 595-600 (distinguishing cases holding that the voluntary case should control); *but see Matter of Descorp, Inc.*, 1992 WL 29833 at *3 (E.D. Pa. Feb. 12, 1992) (concluding that a involuntary case should be dismissed in favor of a voluntary case unless creditors present specific evidence of actual prejudice resulting from loss of the earlier lookback period). The Court would need to grapple with this issue.

8. Bankruptcy Rule 1015(c) requires the Court to resolve the Debtors' simultaneous voluntary and involuntary cases in a manner that "avoid[s] unnecessary costs and delay" while "protecting the rights of the parties under the Code". Fed. R. Bankr. P. 1015(c). This has been interpreted to prohibit "any action or entering any order that would prejudice the rights of any party." 9 Collier on Bankruptcy ¶ 1015.06 (16th ed. 2019). As of today, the Debtors respectfully submit that any option other than suspension would prejudice the Debtors:

- Pursing dismissal of the involuntary case[1] will divert time and resources away from matters essential to the success of the chapter 11 cases.

- Seeking immediate conversion and consolidation into the Involuntary Case will waive defenses to administrative claims of the Petitioning Creditors without knowing if incremental avoidance actions, if any, will pay for them, and waive any damages claim of the estates under section 303(i), while still diverting time and resources to resolve issues related to consolidation.

9. In other words, absent suspension, the Debtors are "require[ed] to choose between two unattractive alternatives. One alternative would be to pay the price of . . .

---

[1] As the Debtors noted at the status conference on June 19, 2019, entry of an order for relief over WSP LLC's objection would require both adjudication of the pending motion to dismiss and a trial to resolve the WSP LLC's subsequent answer to the Involuntary Petition. Both the "good faith" of the Petitioning Creditors and the satisfaction of the requirements of section 303(b)(1) would be at issue.

SC1:4963602.2

litigat[ing] the legal sufficiency of the petition, the bad faith of the petition, and the amount of its damages . . . .  The other alternative would be to convert immediately in order to secure the Chapter 11 advantages the debtor was intended to have but thereby release its claims against the petitioner who allegedly petitioned in bad faith." *Paradise Hotel Corp.* v. *Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988).  The *Paradise* court's bespoke solution to the catch-22 was to permit that debtor to sue the petitioning creditors under state law.  Other courts facing this conundrum have successfully resolved only one of the two issues, but not both.  *Compare Premier Gen.*, 427 B.R. at 600 (ignoring the administrative claim of the petitioning creditors) *with Descorp*, 1992 WL 29833 at *3 (overruling objections due to lost preference actions).

        10.     As a result, suspension is the clear path forward.  In the future, the Debtors will have much more information regarding, among other things, the magnitude of any incremental avoidance actions captured by an earlier lookback period, any administrative claims of the Petitioning Creditors, and any estate claims against the Petitioning Creditors.  With reasonable time, the best path to resolution of the Involuntary Cases is likely to emerge.  Suspension of the involuntary case pursuant to section 305 of the Bankruptcy Code will give the Debtors time to investigate while eliminating the expense and distraction of litigation (including discovery) relating to the Involuntary Petition.  The Motion to Suspend should be granted.[2]

---

[2] Late this afternoon—just prior to the Debtors' deadline to file this Reply and two days after the objection deadline passed—four of the Petitioning Creditors filed an improper new objection to the Motion to Suspend disguised as an "Amended Joinder." [Dkt. No. 151.] The Debtors will address this filing with the Court, but the new argument contained therein that suspension is impossible because WSP LLC's assets are trapped in the involuntary case estate is contrary to black letter bankruptcy law.  *First*, section 303(f) specifically authorizes an involuntary debtor to transfer property, and the Court could order it in any event under section 363(b).  *Second*, section 541(a)(7) specifically provides for augmenting a bankruptcy estate. The Debtors reserve the right to augment its response to these arguments in a supplemental reply, if necessary.

SC1:4963602.2

| | |
|---|---|
| Dated: June 21, 2019<br>Oklahoma City, Oklahoma | /s/ John D. Dale<br>John D. Dale, OBA No. 19787<br>GABLEGOTWALS<br>1100 ONEOK Plaza<br>100 West 5th Street<br>Tulsa, Oklahoma 74103-4217<br>Telephone: (918) 595-4800<br>Fax: (918) 595-4990<br>Email: jdale@gablelaw.com<br><br>-and-<br><br>/s/ Craig M. Regens<br>Craig M. Regens, OBA No. 22894<br>GABLEGOTWALS<br>One Leadership Square<br>211 North Robinson<br>Oklahoma City, Oklahoma 73102<br>Telephone: (405) 568-3313<br>Facsimile: (405) 235-2875<br>cregens@gablelaw.com<br><br>-and-<br><br>Andrew G. Dietderich, NY Bar 2850584<br>Brian D. Glueckstein, NY Bar 4227005<br>David R. Zylberberg, NY Bar 4912432<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>dietdericha@sullcrom.com<br>gluecksteinb@sullcrom.com<br>zylberbergd@sullcrom.com<br><br>*Proposed Co-Counsel to White Star* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 21st day of June, 2019, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  The Clerk of the Court will transmit a Notice of Electronic Filing to the parties and/or entities registered with CM/ECF.

                                            */s/Craig M. Regens*
                                            Craig M. Regens